IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-00306-LTB-KLM

VELMA UNDERWOOD,

                  Plaintiff,

v.

THE GEO GROUP, INC.,

                  Defendant.

_____

## ORDER

_____

       This matter is before me on a Motion for Summary Judgment filed by Defendant, The

GEO Group, Inc. ("GEO"), in which it seeks dismissal of all of the claims asserted against it by

its former employee, Plaintiff Velma Underwood. [**Doc # 59**]  In addition, I address Plaintiff's

Motion for Summary Judgment seeking partial judgment in her favor on her Sixth Claim for

Relief in which she asserts that GEO violated her rights under the Family Medical Leave Act.

[**Doc # 60**] Oral arguments would not materially assist me in the determination of these cross

motions.  After consideration of the parties' arguments, and for the reasons stated below, I

DENY Plaintiff's motion, and I GRANT IN PART and DENY IN PART GEO's motion as

follows.

## I. Background

       This case involves Plaintiff's claims of unlawful employment practices asserted against

GEO, her former employer.  GEO operates a private secure detention center that provides

housing to alleged illegal aliens awaiting administrative hearings pertaining to deportation.

Plaintiff is an African-American female who was employed by GEO, as a detention officer, from January 19, 2001 until her termination on July 28, 2008.

Plaintiff thereafter filed this case against GEO on February 12, 2010.  The claims she asserts are:  Racially Hostile Work Environment (First Claim for Relief); Discrimination in Terms and Conditions of Employment (Second Claim for Relief); Discrimination in Discharge (Third Claim for Relief); Discrimination in Failure to Promote (Fourth Claim for Relief); and Retaliation (Fifth Claim for Relief).  Plaintiff's complaint also asserts Wrongful Termination in Violation of the Family Medical Leave Act (Sixth Claim for Relief), as well as state law claims for Wrongful Termination in Violation of Public Policy (Seventh Claim for Relief) and for Outrageous Conduct (Eighth Claim for Relief).  Plaintiff  seeks punitive damages against GEO.

## II. Summary Judgment Standard

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary judgment is appropriate if the record reveals that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the movant carries its burden of showing the absence of a genuine issue of material fact, the non-movant must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc*., 971 F.2d 492, 494 (10th Cir. 1992).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). When applying this standard, I examine the factual record in the light most favorable to the party opposing

summary judgment, extending to that party all reasonable factual inferences.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III.  Racially Hostile Work Environment Under §1981

In her first claim, Plaintiff asserts a racially hostile work environment in violation of the Civil Rights Acts of 1991, 42 U.S.C. § 1981 ("§1981"). To survive summary judgment on a hostile work environment claim under §1981, a plaintiff  "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Sandoval v. City of Boulder, Colo.,* 388 F.3d 1312, 1326-27 (10th Cir. 2004)(citations omitted).  A pervasively hostile work environment "is not shown by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs; [i]nstead, there must be a steady barrage of opprobrious racial comments."  *Herrera v. Lufkin Industries, Inc.,* 474 F.3d 675, 680 (10th Cir. 2007).

As an initial matter, I first address GEO's argument that Plaintiff's hostile work environment claim should be dismissed because it is barred, as a matter of law, by the applicable statute of limitations.  Plaintiff's hostile work environment claim under §1981 is subject to a four year statute of limitations.  *See Harris v. Allstate Ins. Co.,* 300 F.3d 1183, 1186 (10th Cir. 2002)(*citing* 28 U.S.C. § 1658); *Ware v. Union Pacific R. Co. Omaha,* 278 F.Supp.2d 1263, 1266 (D. Kan. 2003).   Plaintiff does not dispute that the applicable four-year time period in this case runs from  February 12, 2006 thorough February 12, 2010, the day Plaintiff filed her complaint in this matter.   Rather, she argues that "consideration of the entire scope of a [§1981] racially hostile work environment claim, including behavior alleged outside the statutory time

period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Tademy v. Union Pacific Corp.,* 614 F.3d 1132, 1154 (10th Cir. 2008)(*quoting Nat. R.R. Passenger Corp. v. Morgan*, *supra,* 536 U.S. at 105).

I agree with Plaintiff that the law provides that a hostile work environment claim is timely when a contributing act takes place within the statutory time period.  Of Plaintiff's allegations related to her hostile work environment, a number of them fall within the statutory period sufficient to bring the claim within that period; for example, she has alleged that another female black detention officer was called a "slave" in August of 2006.  As a result, I conclude that Plaintiff has alleged evidence of an act contributing to the alleged hostile environment within the statutory time period to avoid summary judgment on statutory limitation grounds.  *See Tademy v. Union Pacific, supra,* 614 F.3d at 1154.

As a basis for her claim, Plaintiff alleges that during her employment at GEO, black detention officers were subject to offensive racial slurs and jokes, and that black detainees were racially segregated, resulting in a hostile working environment.  Plaintiff cites the following evidence in support of her allegations.  First, as to the allegation that racial slurs directed at detention officers, Plaintiff does not point to any evidence that she was the subject of such slurs.  Rather, she relies on declarations and testimony from other black female officers – Lt. DeLisa Matthews, and Officers Loretta Perry Wilborne, Linda Haithcox & Kim Andrews – that indicate they were subjected to profane language from supervisors. [Doc # 63 - Exhibit 7, 8, 9, & 10]  I note, however, that profane language and aggressive behavior – without any related racial animus – cannot form the basis of a hostile work environment based on race.  *See Ramirez v. The*

*GEO Group, Inc.,* 655 F.Supp.2d 1170, 1181 (D.Colo. 2009)("in a rough-and-tumble work environment like a detention facility, crude language is less likely to rise to the level of illegally hostile or offensive")(*citing Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1538 (10th Cir. 1995)).

As to her claim that detention officers were subjected to racial slurs, Plaintiff provides an affidavit from Kim Andrews indicating that "[i]n August 2006, Officer Vilkosky called me a slave.  I filed a complaint against him and there was an investigation and disciplinary action." [Doc # 63 - Exhibit 9]  Plaintiff testified in her deposition that she did not witness this event, but was aware of it.  [Doc #59 - Exhibit A pg. 82]  She also provided an August 2006 letter, sent by the NAACP, which alleges that a GEO supervisor called a black co-worker "Kunta Kunte," but again does not contend that she witnessed or was even aware of this incident.  [Doc # 63 - Exhibit 14]  In fact, Plaintiff indicates that she did not witness racial slurs directed at any co-worker.  [Doc # 63 - Exhibit 14, Exhibit 1, Attachment E, Doc #59 - Exhibit A pg. 13, 82, 118]

To the extent that Plaintiff alleges that she overheard Lieutenant Horton, her supervisor, telling a racial joke about Mexicans, I note that her deposition testimony indicates only that she overheard a conversation, sometime in 2008, in which Lt. Horton said something about a "Mexican immigrant stealing Mexican eggs" and then others laughed.  [Doc # 59 - Exhibit A, pg. 118, Doc #63 - Exhibit 11 pg, 129]

Finally, Plaintiff contends that GEO's company softball team was named a racially derogatory acronym ("NIGYYSOB") in 2003. [Doc # 63 - Exhibit 1 ¶1]  It is undisputed that this "name" was derived from the title of a "life game" – "Now I've got you, you son of a bitch" – from the book *Games People Play* by Dr. Eric Berne. [Doc # 63 - Exhibit1, Attachment E] However, it is apparently disputed as to whether the acronym was intended or perceived as racial

in nature. There is no evidence presented to me regarding the offensive nature of the acronym, whether anyone complained, and the extent that GEO was involved in the name of the softball team.

As noted, Plaintiff concedes that she was not a victim of racial slurs, and she does not contend that she witnessed any slurs directed at co-workers. The Tenth Circuit requires that a plaintiff must "produce evidence from which a rational jury could infer that *she* was targeted for harassment because of <u>her</u> . . . race" in order to demonstrate she was subject to a racially hostile work environment. *See Sandoval v. City of Boulder, supra,* 388 F.3d at 1327 (*citing Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir.1998)(emphasis added).

Plaintiff argues that racial epithets do not have to be stated directly to her to create an objectively hostile environment. Plaintiff cites to *Hirase-Doi v. U.S. West Communications, Inc.,* 61 F.3d 777, 782 (10th Cir. 1995), in which the Tenth Circuit ruled that the plaintiff could rely on her supervisor's sexual harassment of others to establish a hostile work environment for herself. *Id.* (*citing Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1415-16 (10th Cir. 1987)). In *Hirase-Doi v. U.S. West, supra,* the Tenth Circuit held that evidence of a general work atmosphere, including evidence of harassment of other women, may be considered in evaluating a hostile work environment claim. After assessing the evidence, the court ruled that while the plaintiff's "knowledge or lack of knowledge of other specific allegations of harassment may be relevant . . . at trial, it need not be determined here, as there is more than adequate evidence to survive summary judgment on this issue without any of the other specific allegations of harassment of other co-workers" because there was evidence that the plaintiff herself was

subjected to harassment. *Id.* Here, in contrast there is no evidence presented that Plaintiff was subject to racial hostility or that she witnessed any racial hostility directed to her co-workers.

Rather, the evidence supporting Plaintiff's hostile work environment claim is primarily grounded in her assertion that black detainees at the detention center were called derogatory names or were improperly segregated by GEO. As to racial slurs directed towards detainees, Plaintiff refers to her own affidavit indicating that "detainees frequently complained about being called racial slurs by GEO's detention officers," including two specific instances in which detainees complained of being called "nigger" and "foreign nigger." [Doc # 63 - Exhibit 1 ¶3] Plaintiff also refers to the August 2006 NAACP letter that alleges that black detainees were frequently called "Niggers, Foreign Niggers, Kunta Kente, Monkeys, and Yard Apes" by white officers at GEO. [Doc # 63 - Exhibits 14, 1 Attachment D] Finally, Lt. Andrews' affidavit states that she witnessed another officer calling a black detainee a "monkey." [Doc #63 - Exhibit 1 ¶3, 9] However, a review of this evidence reveals that Plaintiff was not witness to such slurs, but rather is reporting what detainees told her or told others. [Doc # 63 - Exhibit 1, Attachments A, E] *See Shaw v. Tulsa Dynaspan Arrow Concrete,* 408 Fed.Appx. 177, 2011 WL 263205 (10th Cir. 2011)(not selected for publication)(ruling that the employer was entitled to summary judgment on the plaintiff's hostile work environment clam when the plaintiff failed to present evidence that he was aware of the racial comments or that they affected his ability to work). Harassment of which the plaintiff is not aware cannot make out a hostile environment claim. *Ramirez v. The GEO Group, supra,* 655 F.Supp.2d at1182 (*citing Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1095 (10th Cir. 2007)).

Plaintiff's evidence that relates to her direct knowledge of such incidents is de minimis at best or unsupported. Specifically, Plaintiff alleges that on February 21, 2008, she provided an affidavit to the Department of Homeland Security's Office for Civil Rights and Civil Liberties alleging generally that she had witnessed racial slurs and jokes directed against immigrant detainees. When asked to describe "each incident" in the affidavit, Plaintiff answered in full: "'That ... Jew' and somebody pick that 'Jew Boy' up from the kitchen." [Doc # 63 - Exhibit 1, Attachment E]

Plaintiff also relies on her allegation that black detainees were racially segregated. In so doing, Plaintiff refers to her affidavit stating that "[d]uring the period from 2006 through 2008, GEO was involved in the practice of racially segregating the black detainees from African countries in Dormitory C, which was infested with mold an other environmental problems." [Doc # 63 - Exhibits 1 ¶2, 15] However, Plaintiff has not referred me to any case authority to support the legal proposition that the racial mistreatment of non-employees, without more, supports a hostile environment claim. More importantly, Plaintiff has provided me with no evidence that the detainees were segregated because of *Plaintiff's* race or that such segregation altered the conditions of *Plaintiff's* employment. *See Sandoval v. City of Boulder, supra; Ramirez v. The GEO Group, supra,* 655 F.Supp.2d at 1182 (*citing Gross v. Burggraf Const, supra,* 53 F.3d at 1531)("the key inquiry is not whether the employee was subject to an unpleasant workplace, but rather whether the hostile environment was due to the employee's race ...").

Thus, because Plaintiff has not provided any evidence that she herself was subject to racial slurs, and she does not specifically aver that she was aware of the slurs directed at her co-

workers, I conclude that even when the evidence cited by Plaintiff is viewed in her favor, she has failed to show a genuine issue of material fact, under the totality of the circumstances, for a rational jury to find that GEO was permeated with racial discrimination sufficiently severe or pervasive to alter the conditions of *her* employment and, as such, created an abusive working environment.

### IV. Second Cause of Action:  Discrimination in Terms & Conditions of Employment

In her second cause of action Plaintiff claims that she was discriminated against in the terms and conditions of her employment in violation of §1981.  Her complaint alleges that: 1) she was restricted on her bathroom privileges while white officers were allowed to leave their dormitories and take breaks with greater frequency than she was; 2) she was not given training equal to the level of non-black officers; 3) GEO failed to accommodate her medical requests – along with other black detention officers – while the medical requests of white officers were accommodated; 4) GEO threatened her with suspension if she did not withdraw her March 2008 race-based complaint; and 5) policy infractions were often intentionally overlooked when committed by white officers, while black officers were often disciplined for the same infractions.

To prove a claim under §1981, a plaintiff may show intentional discrimination by direct evidence.  "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002). It is "evidence, which if believed, proves the existence of a fact in issue without inference or presumption." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007).  "A statement that can plausibly be interpreted two different ways – one discriminatory and the other benign –

does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Id.* at 855

(*quoting Patten v. Wal–Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir. 2002)).

Plaintiff argues that she has provided direct evidence of racial discrimination in the terms

of her employment with GEO in the form of deposition testimony from Lt. Matthews indicating

that in April of 2008 she heard Lt. Horton – Plaintiff's supervisor – state "two down and a few

more to go," in reference to two black female officers at GEO that were terminated, and a few

more that he wanted to be terminated.  [Doc # 63 - Exhibit 7, pg.45]

I first note that Lt. Matthews' deposition testimony does not fully comport with

Plaintiff's version of the evidence.  Counsel asked Matthews if she ever heard Lt. Horton make a

statement "two down and a few more to go," referring to two black female officers.  She

responded:  "I don't know if he was necessarily referring to two back females.  The word or

rumor had it that he had certain staff that he wanted to see terminated and they were black.  But

yeah, I've heard him make the statement 'two down and a few more to go.'"  Matthews then

testified that she reported the statement to GEO in a complaint, and it was investigated, but she

didn't remember the specifics.  Counsel asked if the two black officers Lt. Horton was referring

to were Officers Wilborn and Haithcox, and Matthews responded "[t]o be honest, I'm not sure

who he was talking about.  It was a long time ago for me.  I know that there was some staff,

female staff, that he supposedly didn't like, and I don't know who it was for sure."  Finally,

Matthews responded "yes" when asked if she reported to GEO that Lt. Horton "made the

statement, 'two down and a few more to go,' referring to two black female officers that he fought

to have terminated and a few more he wanted to have terminated." [Doc # 63 - Exhibit 7, pg.44-

45]

10

Nonetheless, contrary to Plaintiff's argument, even when the evidence that Lt. Horton stated "two down and a few more to go" is viewed in her favor, it does not constitute *direct* evidence of discrimination in that it requires an inference to conclude that his statement revealed a plot to undermine the conditions of employment for black detention officers.  As such, Plaintiff has not established direct evidence that demonstrates, on its face and without inference, that decisions related to the employment conditions of black detention officers were reached for discriminatory reasons.  *See Heim v. State of Utah,* 8 F.3d 1541, 1547 (10th Cir. 1993)(ruling that a statement of personal opinion does not constitute direct evidence in that in requires an inference of discriminatory intent).

Although Plaintiff does not have direct evidence of discrimination, she may use indirect evidence by employing the burden-shifting framework in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Perry v. Woodward,* 199 F.3d 1126, 1134 (10th Cir. 1999).  Under this framework, a plaintiff must first present a *prima facie* case of discrimination. Then, the burden of production shifts to the defendant to produce a legitimate, non-discriminatory justification for taking the action in question.  Finally, the burden is redirected at the plaintiff to show the defendant's reason for its actions was merely a pretext for discrimination.  *Id.* at 802-05.

To establish a race-based *prima facie* case of disparate treatment in employment conditions, a plaintiff must show that:  (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) she was treated less favorably than similarly situated employees not in the protected class.  *Trujillo v. Univ. of Colo. Health Sci. Ctr.,* 157 F.3d 1211, 1215 (10th Cir. 1998); *Sydney v. ConMed Elec. Surgery,* 275 Fed.Appx. 748, 751-52 (10th Cir.

11

2008)(not selected for publication).  In its motion GEO argues that Plaintiff cannot prove her *prima facie* case as to any of the adverse employment actions she alleges, and thus it is entitled to summary judgment in its favor on this claim.

GEO first asserts – and I agree – that Plaintiff has neither argued nor provided any evidence in support of her initial assertions that she was discriminated against due to her race in the alleged unequal restriction on bathroom privileges, training opportunities, threat of suspension, and enforcement of policy infractions.  Rather, in response to this motion Plaintiff argues only that GEO refused to accommodate the medical conditions of black detention officers, while it accommodated the medical needs of white officers such as Officer McClune (pregnancy) and Officer Woods (work place injury caused by a leg/hip problem).

In support of her argument Plaintiff avers in her affidavit that she complained to GEO that it failed to accommodate the medical needs of black detention officers including Officer Flowers (kidney dialysis), Andrews (lupus), and Widnoms (heart disease).  [Doc #63 - Exhibit 1 ¶4, Attachment B]  Plaintiff also refers me to Officer Andrews' affidavit which indicates that in 2007 GEO did not accommodate her medical need to be scheduled for swing shifts (as opposed to the graveyard shift) "due to migraines associated with lupus," and also did not accommodate her medical need to wear her hair down when experiencing migraine headaches. [Doc #63 - Exhibit 9 ¶5-6]  Moreover, Andrews avers that GEO failed to provide her with a light duty position after she sustained on-the-job injuries to her right upper arm and shoulder, and neck. [Doc #63 - Exhibit 9, ¶7-13]   In contrast, Plaintiff points to the testimony of Captain Harrison, who testified that it is GEO's policy to accommodate work place injuries and recalled that Officer Wood had a workplace injury to "her leg or her hip" and that he believed she was

accommodated by being allowed to "work in the lobby area a lot, as best I can recall." [Doc # 63 - Exhibit 3]   In addition, Plaintiff refers to the deposition testimony of Warden Hunt that indicates GEO tries to accommodate the medical requests of its employees as required by law. [Doc # 63 - Exhibit 12 pg.79-81]

GEO argues that Plaintiff has failed to assert that she requested and was denied accommodation and, as such, she cannot show that she suffered an adverse employment action or that she was treated less favorably.  Plaintiff has alleged, however, that GEO terminated both herself and Officer Andrews when they were "suffering from medical conditions."  In addition, Plaintiff provides me an Employee Complaint form, dated March 17, 2008, which alleges that GEO engaged in discriminatory practices when accommodating employees, and appears to indicate that it denied Plaintiff's request to not work the graveyard shift. [Doc # 63 - Exhibit 1 Attachment B]  I conclude that the evidence cited by Plaintiff, when viewed in the light most favorable to her, is sufficient to raise a genuine issue of material fact as to whether GEO accommodated the medical needs of similarly situated white employees, but did not accommodate her medical requests and those of other black employees.

In addition, Plaintiff now argues that during 2006 through 2008 she and other black detention officers were discriminated against in that they were required to "do a majority of the strip searches of the female detainees," while white detention officers were allowed to refuse to do them.  Plaintiff refers me to her affidavit, in which she states that:

> Lt. Horton discriminated against black detention officers as he required them to do a majority of the strip searches of the female detainees.  In particular, white detention officers Beauman and Laura Nelson frequently did not want to do strip searches and generally, Lt. Horton would allow them to refuse and would then

13

call upon black detention officers including my self, D.O. Andrews, D.O. Wilborn and/or D.O. Haithcox to perform strip searches. [Doc # 63 - Exhibit 1 ¶ 7]

Plaintiff also refers me to Officer Andrews' affidavit which mirrors this allegation. [Doc # 63 - Exhibit 9 ¶ 24]

I find that the evidence cited by Plaintiff is sufficient to make out a *prima facie* case of employment discrimination for a jury to determine whether she was treated less favorably than similarly situated employees as to the adverse employment actions of: 1) failing to accommodate the medical needs of black employees, while accommodating the requests of white employees, and 2) requiring black detention officers to perform strip searches when white officers refused to.  As such, GEO is not entitled to summary judgment on Plaintiff's §1981 claim for Discrimination in the Terms and Conditions of Employment.

### IV. Third Cause of Action - Discrimination in Discharge

Plaintiff's third claim against GEO asserts that she was unlawfully discharged on the basis of her race in violation of §1981 and 42 U.S.C. §§ 2000e, *et. seq.* ("Title VII").  In its motion, GEO argues this claim must be dismissed because 1) she cannot make a *prima facie* case, 2) GEO had a legitimate, non-discriminatory reason for her termination, and 3) Plaintiff has not met her burden to show pretext.

As an initial matter, I again reject Plaintiff's argument to the extent that she contends that Lt. Horton's comment – that "two down and a few more to go" following the termination of two black female employees – constitutes *direct* evidence that Plaintiff's subsequent termination was based on her race.  As discussed *supra*, this evidence requires an inferential analysis to conclude

14

that Lt. Horton's statement indicated that the decision to terminate Plaintiff was based on her race.

Instead, Plaintiff must make out her *prima facie* case, based on indirect evidence, that her termination inferred discrimination.  To establish a *prima facie* case of termination on the basis of race, a plaintiff must demonstrate that:  (1) she was a member of a protected class; (2) she was qualified and satisfactorily performing her job; and (3) she was terminated under circumstances giving rise to an inference of discrimination.  *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004).  For the purposes of arguing this motion, GEO concedes that Plaintiff can show that she is a member of a protected class and was qualified for the position, but asserts that she cannot show that her termination implies an act of race discrimination.

Plaintiff relies upon the following circumstantial evidence:  Lt. Horton's "two down and a few more to go" comment; Lt. Horton's telling a joke about a Mexican man stealing Mexican eggs; GEO's alleged refusal to accommodate the medical requests of black employees; and Lt. Horton's policy of requiring black detention officers to perform the strip searches that the white officers did not want to do.

I agree with GEO that this evidence does not infer that Plaintiff's termination was improperly motivated by her race.  It is undisputed that Lt. Horton was not involved in the decision to terminate Plaintiff – he did not have authority to do so and, moreover, he resigned two months prior to Plaintiff's termination.  While this evidence may support Plaintiff's claims that her race was improperly related to alleged unequal terms and conditions of employment, discussed *supra*, or that Plaintiff was improperly retaliated against for complaining about improper treatment based on race, discussed *infra*, it is too tenuous to support an inference that

15

Plaintiff's termination, in itself, was done under circumstances giving rise to an inference of discrimination.  As such, Plaintiff cannot make out the third element of her *prima facie* case.

Even she was able to make out her *prima facie* case, however, GEO has clearly articulated a legitimate non-discriminatory reason for Plaintiff's termination. GEO refers me to evidence that it conducted an investigation into complaints by Plaintiff's co-workers that she was a hostile employee, made the staff uneasy, and she admitted to filing frivolous complaints. [Doc #71 - Exhibits 18, 20, 21]  During the course of the investigation, Plaintiff refused to attend a disciplinary hearing. [Doc #71 - Exhibit 25]  The failure to attend the hearing and the outcome of the investigation resulted in GEO finding that Plaintiff violated various policies.  [Doc #71 - Exhibit 26]  So, she was presented with a "Last Chance Agreement" on July 23, 2008 – that required she correct her performance or be terminated – which Plaintiff admitted she had no intention of signing.  [Doc #71 - Exhibits 28, 29 and 46]  GEO then terminated Plaintiff.  The termination notice sent to Plaintiff indicated that: "[y]our insubordinate behavior last week, the continued refusal to sign the Last Chance Agreement and to report to work your scheduled shift is unacceptable and contrary to GEO policy.  Effective today your employment with GEO is terminated."   [Doc #71 - Exhibit T]

Because GEO has set forth a legitimate reason for Plaintiff's termination, the burden then shifts back to Plaintiff to demonstrate that the proffered reason was a pretext for discrimination. A pretext argument "provides a method of satisfying this burden by allowing the factfinder to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir.2007)(*quoting Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105

(2000)).  Pretext is shown by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence" and hence infer that the employer did not act for the asserted nondiscriminatory reasons.  *Plotke v. White,* 405 F.3d 1092, 1102 (10th Cir. 2005)(*quoting Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997)).

Plaintiff does not argue or provide me with any specific rationale or evidence in support of her burden to prove that GEO's proffered reason for her termination was pretext.  She apparently relies on the circumstantial evidence that indicates her supervisor, Lt. Horton, exhibited racial animus in the form of his desire to see black female employees terminated and his requiring black detention officers to perform the strip searches that the white officers did not want to do, and in GEO's refusal to accommodate the medical requests of black employees. This evidence does not reveal a weakness or contradiction in the proffered legitimate reasons for termination sufficient for a reasonable factfinder to find them unworthy of belief.  "Mere conjecture that the employer's explanation is a pretext for intentional discrimination, however, is not enough to overcome a motion for summary judgment."  *Valdivia v. University of Kansas Medical Center,* 24 F.Supp.2d 1169, 1176 (D.Kan. 1998)(*citing Stowers v. Wells' Dairy, Inc.*, 982 F.Supp. 1441, 1444 (D.Kan.1997) & *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988)).  I conclude that Plaintiff is unable to demonstrate that the legitimate reasons given for her termination constituted pretext for discrimination in order to survive summary judgment in favor of GEO.

## V. Fourth Cause of Action - Discrimination in Failure to Promote

In this claim, Plaintiff asserts that GEO engaged in discrimination by failing to promote her in violation of §1981 and Title VII.  To establish a *prima facie* case of discriminatory failure to promote, a plaintiff must show that (1) she is a member of a minority group, (2) she was qualified for the promotion, (3) she applied for the position at issue, (4) she was not promoted, and (5) the position was filled or remained open after her application.  *Reynolds v. School Dist. No. 1, Denver, Colo.,*  69 F.3d 1523, 1534 (10th Cir. 1995).

GEO maintains that the only promotion Plaintiff sought during her employment was for a Lead Classification Officer position in April of 2008.  GEO provides evidence that Plaintiff, along with the other five applicants, appeared before a three-person oral board.  After being asked the same questions, the applicant's were rated based on their responses.  Plaintiff was rated fifth.  The warden then made a choice from the top three candidates, and the position was offered to the top scoring applicant – a Hispanic female. [Exhibits AA & BB]

GEO asserts that under these circumstances, Plaintiff cannot prove that she was qualified for the position to make out her *prima facie* case of failure to promote.  It also asserts that by selecting the most qualified candidate, it has articulates a valid, non-discriminatory justification for not promoting Plaintiff.   Plaintiff does not dispute this evidence, nor does she advance an argument against GEO's position.  As a result, I conclude that Plaintiff's failure to promote claim should be dismissed and GEO is entitled to summary judgment.

### VI. Fifth Cause of Action – Retaliation

In her fifth claim, Plaintiff asserts that GEO retaliated against her, in violation of Title VII and §1981, after she lodged complaints about the racially hostile work environment at GEO. In order to establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *Somoza v. University of Denver,* 513 F.3d 1206, 1212 (10th Cir. 2008)(*quoting Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

GEO first asserts that Plaintiff has not meet her burden of providing sufficient evidence that she engaged in protected activities pursuant to the first *prima facie* element. In her response, Plaintiff argues that she clearly engaged in a protected activity by: (1) lodging internal complaints of race discrimination with GEO during the period from 2005 to 2008; (2) being a complainant in the NAACP letter alleging race discrimination by GEO in August 2006; (3) filing an Affidavit with the Department of Homeland Security in January 2007 against GEO; and (4) filing a charge of race discrimination with the EEOC in May 2008.

GEO argues that this evidence of these activities is insufficient because the claim that she made "various internal complaints" is not supported by any evidence of when or how such complaints were made, there is no evidence supporting Plaintiff's contention that she "was a complainant" in the NAACP letter, and her alleged affidavit to the Department of Homeland Security in January 2007 also failed to indicate that she was a complainant. I disagree. Plaintiff has set forth sufficient evidence, when it is viewed in her favor, to find that she engaged in

protected activity in order to meet the first element of her *prima facie* case.  As GEO itself

concedes, Plaintiff did file two complaints on or about April 4, 2008 that "intimated race issues."

GEO also argues that Plaintiff cannot meet the second *prima facie* element that a

reasonable employee would have found the alleged actions by GEO against her materially

adverse.  In her complaint, Plaintiff alleges that GEO retaliated against her by: 1) giving her a

negative performance evaluation after filing an internal complaint of discrimination; 2)

rescinding her "spot award" after she gave a deposition in which she testified unfavorably

against GEO; and 3) placing her on administrative leave after she complained of discriminatory

conduct.  In response to this motion, Plaintiff does not address GEO's contention that a

reasonable employee would not, under the circumstances here, find these actions to be materially

adverse.  Rather, Plaintiff argues that she was given a Last Chance Agreement for, in part, filing

"frivolous complaints," and she was ultimately terminated while on medical leave for, in part,

her "purported refusal to sign" that agreement. [Doc # 63, pg. 23]  I find that the actions related

to Plaintiff's termination by GEO were clearly materially adverse in order to make out the

second element of her *prima facie* case.

GEO next argues that Plaintiff's claim that it terminated her in retaliation for her

complaints of discrimination does not meet the third *prima facie* element  that a causal

connection existed between the protected activities and the materially adverse action of

termination.  GEO maintains that while Plaintiff did file two internal complaints in April 2008

that raised issues of race, she was not terminated until July 28, 2008, over three months later.

*See generally Meiners v. University of Kansas,* 359 F.3d 1222, 1231 (10th Cir. 2004)(finding

that three and one-half months was too long to "establish causation by temporal proximity alone").

Plaintiff provides evidence that in April of 2008, an incident occurred between herself and other GEO employees. [Doc # 59 - Exhibit E]  After cross-complaints were filed – in which Plaintiff asserted, among other things, that her race was a factor or involved in the incident [Doc #59 - Exhibits F&G] – Plaintiff was placed on administrative leave with pay on April 4, 2008. [Doc # 59 - Exhibit A pg.162]  Following an investigation, GEO asked Plaintiff to appear at a disciplinary hearing schedule for May 1, 2008. [Doc # 59 - Exhibit O]  At the hearing, which Plaintiff did not attend, the disciplinary board found several sustained violations against Plaintiff. [Doc # 59 - Exhibits I, J pg.52-53]  Plaintiff was informed of the violations and during a meeting on July 23, 2008, and she was asked to sign the Last Chance Agreement. [Doc # 63 - Exhibit 20] Ultimately, on July 28, 2008, GEO terminated Plaintiff's employment for, in part, refusal to sign the Last Chance Agreement. [Doc # 59 - Exhibit T]  I find that Plaintiff's evidence related to her termination is more than sufficient to set forth a causal connection between her filing complaints in April and her ultimate termination and, thus, she has made out a *prima facie* case of retaliation.

GEO next argues that if I conclude, as I have, that Plaintiff established her *prima facie* case, it has articulated a legitimate, nondiscriminatory reason for her termination – namely, that Plaintiff failed to sign the Last Chance Agreement, her insubordination during the meeting regarding the Last Chance Agreement, and her refusal to report to work on July 28, 2008.   While these reasons are, on their face, non-discriminatory, given the circumstances surrounding the Last Chance Agreement, Plaintiff's evidence raises a genuine issue of material fact as to whether GEO's proffered reasons for her termination were pretextual in order to withstand dismissal on

summary judgement.  *See Pastran v. K-Mart Corp.,* 210 F.3d 1201, 1207 (10th Cir. 2000)(finding that circumstantial evidence of retaliatory motive – although far from conclusive – in combination of temporal proximately was sufficient evidence of pretext for the claim to go to the jury).

## VII.  Sixth Cause of Action – Violation of FMLA

In her sixth claim, Plaintiff contends that GEO interfered with her rights to take leave under the Family Medical Leave Act, 29 U.S.C. §§ 2601-2654 (the "FMLA"), by terminating her while she was seeking medical treatment on FMLA leave.  GEO seeks summary judgment in its favor on the grounds that her termination was unrelated to the exercise of her FMLA rights.  In contrast, Plaintiff seeks judgment in her favor – in her motion seeking partial summary judgment – on the basis that it is undisputed that she was on FMLA leave at the time she was terminated and, thus, GEO interfered with her FMLA leave.

When faced with cross motions for summary judgment, the court "[is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

Employees are authorized to bring an action to recover damages for violations of the FMLA.  *See* 29 U.S.C. § 2617(a).  Plaintiff's FMLA claim here arises out of the "entitlement or interference" theory of recovery, pursuant to 29 U.S.C. § 2615(a)(1), which provides that: "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." *See Smith v. Diffee Ford-Lincoln-*

*Mercury, Inc.,* 298 F.3d 955, 960 (10th Cir. 2002).  To make out a *prima facie* claim for FMLA interference, a plaintiff must establish:  (1) that she was entitled to FMLA leave; (2) that some adverse action by the employer interfered with her right to take FMLA leave; and (3) that the employer's action was related to the exercise of her  FMLA rights.  *Jones v. Denver Public Schools,* 427 F.3d 1315, 1318 (10th Cir. 2005)(*citing Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004)).  An interference claim is derived from the FMLA's creation of substantive rights; thus, "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent."  *Smith v. Diffee Ford-Lincoln-Mercury*, *supra*, 298 F.3d at 960.

The circumstances of Plaintiff's termination, and her FMLA leave at that time, are as follows.  In April of 2008, an incident occurred between Plaintiff, two other detention officers, and Lt. Horton. [Doc # 59 - Exhibit E]  A subsequent investigation concluded that Plaintiff's allegations against the other officers were vague and not supported by sufficient facts.  [Doc # 59-Exhibits F&G]  The investigation also concluded that there were sufficient facts to sustain the allegations that Plaintiff created a non-conducive and hostile working environment, and that she maliciously harassed other employees. [Doc # 59 - Exhibit F pg.11]

As a result, GEO contacted Plaintiff on April 20, 2008, requesting that she appear at a disciplinary hearing schedule for May 1, 2008, but Plaintiff refused to attend. [Doc # 59 - Exhibit O]  At the hearing, the disciplinary board found the following sustained violations against Plaintiff: 1) unsatisfactory job performance which severely impacted the efficient  and effective operations of the facility; 2) harassing a fellow employee; and 3) creating a non-conductive work

environment.  [Doc # 59 - Exhibits I, J pg. 52-53]  The board recommended termination, and

Warden Hunt concurred on May 1, 2001.   [Doc # 59 - Exhibit I]

Plaintiff was informed of the violations and during a meeting on July 23, 2008, when she

was asked to sign a Last Chance Agreement. [Doc # 63 - Exhibit 20]  Plaintiff refused, and the

Warden, Assistant Warden, and a Captain found that Plaintiff was uncooperative and

insubordinate during the meeting.  [Doc # 59 - Exhibits L & M]  Plaintiff did not work her shift

after that meeting due to a prior appointment. [Doc #63, Exhibits 19 and 20; Doc # 59 - Exhibit A

pg.225]

Later that day, Plaintiff notified GEO that she would be taking FMLA leave for her shift

scheduled for the next morning, Thursday, July 24, 2008.  [Doc # 63- Exhibit 18; Doc # 59 -

Exhibits A pg. 235 & L]  Both parties agree that this absence from work was proper leave as set

forth in Plaintiff's FMLA medical certificate on file with GEO which allowed Plaintiff to take off

up to two days per month for intermittent treatment of her anxiety.  [Doc # 59 - Exhibit F pg.11]

On Friday, July 25, 2001, Plaintiff again informed GEO that she was taking  FMLA leave

for her shift, and would not be at work that day.  [Doc # 59 - Exhibits A pg. 244 & P]  This leave

was also recognized as FMLA leave by GEO.  [Doc # 59 - Exhibit N pg. 33, Doc # 63 - Exhibit

21] On that day GEO unsuccessfully attempted to contact Plaintiff via phone during regular

business hours. [Doc # 59 - Exhibit Q]  It then sent Plaintiff a letter, via Federal Express, dated

July 25, 2008, stating that "you must sign the last chance agreement and you must report to work

on second shift on [Monday] July 28, 2008.  Your failure to do so will result in additional

disciplinary action against you up to and including termination."  [Doc # 63- Exhibit 28,  Doc #

59 - Exhibit R]  Plaintiff missed the attempted delivery of the letter on Saturday, July 26, 2001.

24

[Doc # 59 - Exhibit A pg. 247-48]  Plaintiff again called into work prior to the beginning on her shift on Monday, July 28, 2008, and indicated she was calling in sick or requesting FMLA leave. [Doc # 63 - Exhibits 29, 18  pg.50, & 19; Doc # 59 - Exhibits A pg. 250 & S]  Later that morning Plaintiff received the letter from GEO via delivery from Federal Express at 9:51AM.  [Doc # 59 - Exhibit A pg.256]

On July 28, 2008, GEO terminated Plaintiff's employment for: insubordination during the Lance Change Agreement meeting on July 23, refusal to sign the Last Chance Agreement, and failing to report for work. [Doc # 59 - Exhibit T]  Later that evening Plaintiff sent to GEO, via facsimile, a note from a social worker at Kaiser Permanente stating that Plaintiff received treatment on July 28, and would be doing so again on July 29, 2008. [Doc # 59 - Exhibits A pg. 269 & U; Doc # 63 - Exhibits 30 & 129]  Plaintiff then called GEO asking that she be placed on FMLA leave for her shift the next day, Tuesday, July 29, 2008.  The person who answered the call instructed Plaintiff to contact GEO the next morning, which Plaintiff did not do.  [Doc # 59 - Exhibit A pg. 273-74]  Plaintiff then received the termination letter from GEO, via certified mail delivery, on July 29, 2008.  [Doc # 59 - Exhibits A pg. 274-76 & T ]

Plaintiff maintains that she was on FMLA leave on July 28, 2008 and, thus, GEO unlawfully terminated her on that day.  Plaintiff must demonstrate, as the first element of her *prima facie* case, that she was entitled to FMLA leave.  Although she admits that she has used her two days of leave for the month – as set forth in the medical certification from her doctor that she had on file with GEO – she argues that GEO's written FMLA policy allows her fifteen days after July 28, 2008 to obtain a new certification authorizing the additional leave.  [Doc # 63 - Exhibit 23, 18  pg.52-3]  Therefore, she was entitled to take FMLA leave on July 28th because under

25

GEO's policy, Plaintiff had fifteen days to obtain a medical certification retroactively authorizing the leave.  While this question remains hotly disputed – in that GEO maintains that Plaintiff was not entitled to take FMLA leave on July 28th as she had exhausted her approved FMLA leave for the month, she did not attempt to obtain a new certification, she was not suffering from a serious health condition, and she failed to make a proper request for such leave – I find that she has set forth sufficient evidence that she could have been entitled to FMLA leave on July 28th to make out the first element of her *prima facie* case.

GEO next maintains that Plaintiff cannot make out the second and third elements of her *prima facie* case – that an adverse action by GEO interfered with her right to take FMLA leave, and GEO's actions in was terminating her was related to the exercise of her FMLA rights – because it is undisputed that Plaintiff was properly terminated regardless of her request for FMLA leave on July 28th.  GEO points to the fact that Plaintiff was informed that she would be subject to dismissal for failure to sign the Last Chance Agreement, and Plaintiff has admitted that she had no intention of signing it.  *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir.1998)("an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request"); *see also Moss v. Bluecross, Blue Shield of Kansas, Inc* 534 F.Supp.2d 1190, 1200 (D.Kan. 2008)("an employee may be terminated, even where the termination interferes with her ability to take FMLA leave, so long as she would have been terminated regardless of her leave request").

I find, however, that Plaintiff has set forth sufficient evidence that GEO's termination of her employment was, at least in part, for failing to come to work on July 28th. GEO indicated in

its letter dated July 27, 208, that in order to avoid "additional disciplinary action against you up to and including termination" Plaintiff was required to sign the Last Chance Agreement and "must report to work on second shift on July 28, 2008."   Although Plaintiff was not aware of the letter at the time, she was subsequently terminated after not reporting for work on July 28th.  This evidence is sufficient for Plaintiff to meet her *prima facie* burden that her termination interfered with and was related to the exercise of her FMLA rights.

The evidence regarding whether Plaintiff would have been terminated regardless of her FMLA request is far from undisputed.  Based on these disputed issues of material fact, neither party is entitled to summary judgment on Plaintiff's claim for interference under the FMLA.  *See Moss v. Bluecross, supra,* 534 Fed. Supp2d at 1202 (declining to grant either party's motion for summary judgment when the evidence regarding whether the plaintiff would have been terminated regardless of her FMLA request was disputed).

**VIII. Seventh Cause of Action – Wrongful Termination Under Colo Law**

In her seventh claim for relief, Plaintiff maintains that GEO wrongfully terminated her in violation of public policy under Colorado law, which provides that an employee will have a cognizable claim for wrongful discharge "if the discharge of the employee contravenes a clear mandate of public policy." *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 107 (Colo. 1992) (*quoting Thompson v. St. Regis Paper Co.,*102 Wash.2d 219, 685 P.2d 1081, 1089 (1984)).

As relevant here, a plaintiff may state a claim for retaliatory discharge in violation of public policy by alleging that:  (1) she was employed by the defendant; (2) the defendant discharged her; and (3) the defendant discharged her "in retaliation for exercising a job-related right or performing a specific statutory duty, or that the termination would undermine a clearly

expressed public policy." *Kearl v. Portage Environmental, Inc.* 205 P.3d 496, 499 (Colo. App. 2008)(*citing Martin Marietta Corp. v Lorenz, supra* 823 P.2d at 109).

GEO argues that this claim is not cognizable because Plaintiff's complaint asserts that she was wrongfully terminated while she was on medical leave, and for complaining of race discrimination, including that the detainees at GEO were subject to racial segregation.  Because these claims are the same as and/or are encompassed within her federal claims for Interference with FMLA Leave, Retaliation, and Hostile Work Environment, GEO argues that her termination claim here is precluded because "Colorado courts have expressly disallowed its [public policy claim] application where a statute provides a wrongful discharge remedy." *Caspar v. Lucent Technologies, Inc.*, 280 F.Supp.2d 1246 (D.Colo. 2003)(dismissing a state law claim for wrongful discharge in violation of Colorado public policy when plaintiff brought suit alleging wrongful termination under Title VII and the Age Discrimination in Employment Act)(*citing Martin Marietta Corp. v. Lorenz, supra*, 823 P.2d 100 at n. 5).   Plaintiff fails to respond to this argument, and I agree with GEO that this claim is not cognizable as a matter of law.  *See Caspar v. Lucent Technologies, supra.*

## IX.  Eighth Cause of Action – Outrageous Conduct

In her eighth claim, Plaintiff asserts that GEO engaged in extreme and outrageous conduct causing her severe emotional distress.  The elements of an outrageous conduct claim under Colorado law are:  (1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress, and (3) causing the plaintiff severe emotional distress.  *Green v. QWest Services Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). Plaintiff argues that GEO engaged in extreme and outrageous conduct by committing four

violations of federal law:  (1) subjecting her to a racially hostile work environment; (2)

disciplining and ultimately terminating her for complaining of race discrimination; (3) providing

unequal terms and conditions of employment based on race; and (4) illegally terminating her

employment while she was on medical leave under the FMLA.

GEO asserts that Plaintiff's outrageous conduct claim must be dismissed because it

"contain[s] no separate factual allegations for the outrageous conduct claim which differed from

the factual allegations supporting [her] other claims."  *Kashawny v. Xcel Energy Services, Inc.*,

2010WL1009897 (D.Colo 2010)(unpublished); *see also Katz v. City of Aurora,* 85 F.Supp.2d

1012, 1021 (D.Colo. 2000)("[w]here the allegations forming the basis of a claim for outrageous

conduct are the same as those forming the basis for a claim of discrimination, and nothing more,

they fail to state an independently cognizable claim for which relief ").

Plaintiff's responds that "protracted, unlawful harassment in the employment context is

generally a fact question that should be left to the jury as to whether it constitutes outrageous

conduct."  *See Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004).  This legal

proposition, while true, does not address the requirement, under Colorado law, that an outrageous

conduct claim requires "*independently ascertainable* misconduct from which the 'ineluctable

conclusion' is the calculated or reckless infliction of severe mental suffering."  *Visor v.

Sprint/United Mgmt. Co.*, 965 F.Supp. 31, 33 (D.Colo. 1997)(*quoting Gard v. Teletronics Pacing

Systems, Inc.*, 859 Fed. Supp. 1349, 1354 (D. Colo. 1994)(emphasis added).

Here, Plaintiff does not contest that the allegations supporting her claim for outrageous

conduct are the same as those supporting her discrimination, retaliation and FMLA claims.  Her

outrageous conduct claim must be dismissed as not cognizable under Colorado law.  *See Kashawny v. Xcel Energy, supra.*

## X.  PUNITIVE DAMAGES

Finally, GEO asserts that punitive damages are not available here, because Plaintiff cannot prove that GEO engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  Specifically, GEO argues that because there is no evidence of malice or reckless indifference or, alternatively, there is no evidence that GEO had actual or constructive notice thereof, it maintains that Plaintiff's request for punitive damages must be dismissed.

A jury may award punitive damages in a Title VII claim if the complaining party demonstrates that the employer engaged in a discriminatory practice with malice or with reckless indifference to her federally protected rights.  42 U.S.C. § 1981a(b)(1); *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1186 (10th Cir. 1999).  "Malice" and "reckless indifference" in this context refer not to the egregiousness of the employer's conduct, but rather to the employer's knowledge that it may be acting in violation of federal law.  *Kolstad v. American Dental Association,* 527 U.S. 526, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999).

Plaintiff argues and produces evidence that GEO was aware of her allegations of discrimination based on race– as evidenced by her internal and external complaints thereof – but instead terminated her in retaliation for her complaints.  When the evidence is viewed in favor of Plaintiff, I find that she has alleged evidence that GEO engaged in a discriminatory practice with malice or with reckless indifference to her federally protected rights – at this point in the litigation – in order to seek punitive damages under Title VII.

30

ACCORDINGLY,  I DENY Plaintiff's Motion for Summary Judgment seeking partial judgment in her favor on her Sixth Claim for Relief [**Doc # 60**]; and I GRANT IN PART and DENY IN PART Defendant's Motion for Summary Judgment [**Doc # 59**] as follows:

1) I GRANT the motion as to the following claims:  First Claim for Relief for Racially Hostile Work Environment; Third Claim for Relief for Discrimination in Discharge; Fourth Claim for Discrimination in Failure to Promote; Seventh Claim for Relief for Wrongful Termination in Violation of Public Policy; and Eighth Claim for Relief for Outrageous Conduct.  As a result, summary judgment in entered in favor of Defendant on these claims, and they are DISMISSED WITH PREJUDICE.

2)  I DENY the motion as to the following claims: Second Claim for Relief for Discrimination in Terms and Conditions of Employment; Fifth Claim for Relief for Retaliation; Sixth Claim for Relief for Wrongful Termination in Violation of the FMLA; and punitive damages under Title VII.

Dated: November   17   , 2011, in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock

LEWIS T. BABCOCK, JUDGE